UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA          )
                                  )
                                  )
vs.                               )   CR No. 10-10177-NMG
                                  )
                                  )
LAWRENCE BARTONE                  )


BEFORE:  THE HONORABLE NATHANIEL M. GORTON


DISPOSITION


APPEARANCES:

    OFFICE OF THE UNITED STATES ATTORNEY (By:  Thomas Kanwit,
    AUSA), 1 Courthouse Way, Boston, Massachusetts 02210.  On
    Behalf of the Government.

    LAW OFFICE OF ROBERT L. SHEKETOFF (By:  Robert L.
    Sheketoff, Esq., and Kirsten Wenge, Esq.), One McKinley
    Square, Boston, Massachusetts 02109.  On behalf of the
    Defendant.

            John Joseph Moakley United States Courthouse
                       Courtroom No. 4
                      One Courthouse Way
                       Boston, MA 02210
                    Tuesday, July 12, 2011
                          4:30 p.m.


                 Cheryl Dahlstrom, RMR, CRR
                    Official Court Reporter
            John Joseph Moakley United States Courthouse
                  One Courthouse Way, Room 3209
                       Boston, MA 02210
             Mechanical Steno - Transcript by Computer

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  This is Criminal Action No. 10-10177,
 3    United States of America vs. Lawrence Bartone.  Would counsel
 4    please identify themselves for the record.
 5           MR. KANWIT:  Good afternoon, your Honor.  Thomas
 6    Kanwit for the United States.
 7           THE COURT:  Good afternoon, Mr. Kanwit.
 8           MS. WENGE:  Good afternoon, your Honor.  Kirsten Wenge
 9    on behalf of Mr. Bartone.
10           THE COURT:  Miss Wenge.
11           MR. SHEKETOFF:  Good afternoon, your Honor.  Robert
12    Sheketoff, also on behalf of Mr. Bartone.
13           THE COURT:  Mr. Sheketoff, good afternoon, and Mr.
14    Bartone.  We have, again, Miss Marcy from the Probation
15    Department.
16           We are here on the sentencing of Mr. Lawrence Bartone.
17    And I have received and read the Presentence Report.  The
18    United States has filed a motion for a preliminary order of
19    forfeiture.  But there are no other writings that I'm aware of.
20           Is there anything that I haven't mentioned that I
21    should have received?
22           MR. KANWIT:  No, your Honor, not from the government.
23           MR. SHEKETOFF:  No, your Honor.  I do have a letter
24    from his wife that I intend to read a portion of to the Court,
25    but there is no other writing that I have filed.
```

1          THE COURT:  That's fine.  I'll hear it when you get to

2     it, Mr. Sheketoff.

3          Then turning to the Presentence Report, as I

4     understand it, there are no objections -- or at least there was

5     one objection that was resolved by Probation.  But there are no

6     other outstanding objections to the Presentence Report; is that

7     correct, counsel?

8          MR. KANWIT:  That is correct, your Honor.

9          MR. SHEKETOFF:  That's correct.

04:32 10          THE COURT:  Then we'll turn to the establishment of

11     the advisory guidelines.  And they are recommended to me in the

12     Presentence Report, starting at Page 7, wherein it is

13     recommended that we are dealing with the most recent guidelines

14     manual, that is, the November 2010 edition, and that these

15     crimes are to be grouped in two separate groups:  one with

16     respect to the January 29, 2010, robbery; and the second group

17     with respect to the March 12, 2010, attempted robbery.

18          They both are controlled by Guideline 2B3.1, that is,

19     the general robbery guideline.  And under Section -- well, that

04:33 20     guideline calls for a base offense level of 20.  And under

21     Subsection (b)(1), because the property involved was of the

22     post office, a two-level increase is called for.  Furthermore,

23     under Subsection (b)(2)(E), because a dangerous weapon was

24     brandished, a three-level increase is warranted under the first

25     group.  And, finally, because the loss was approximately

1    $13,500, Subsection (b)(7)(B) calls for an additional level

2    increase because that loss falls between 10,000 and $50,000.

3    That means that the adjusted offense level under Group I is 26.

4         Group II, that is, the attempted robbery in March of

5    2010, controlled by the same guideline, has the same base

6    offense level of 20; the same add-on because the property was

7    that of the post office.  Under Subsection (b)(1), that's a

8    two-level increase; and the same three-level increase under

9    (b)(2)(E) because a dangerous weapon in this case was

04:34 10    possessed.  There was no loss so, of course, there is no

11    further adjustment for the loss because this robbery was

12    thwarted before it occurred.  That means the adjusted offense

13    level in Group II was 25 by virtue of the combined offense

14    level, Guideline Section 3D1.4, the greatest adjusted offense

15    level being 26.

16         The fact that there are two units involved by virtue

17    of the grouping means that the combined adjusted offense level

18    is 28.  This defendant did accept responsibility and pled

19    guilty.  Therefore, he is entitled to a three-level downward

04:34 20    adjustment and ends up with a combined total offense level of

21    25.

22         Do counsel agree with all of those calculations?

23         MR. KANWIT:  The government does, your Honor.

24         THE COURT:  Mr. Sheketoff?

25         MR. SHEKETOFF:  I agree.

1          THE COURT:  All right.  Then turning to the

2     defendant's criminal history, there are no known prior

3     convictions.  The defendant, therefore, falls in Criminal

4     History Category I.  And that means that under the guidelines,

5     Offense Level 25, Criminal History Category I, calls for a

6     guideline range of 57 to 71 months.

7          With that, I will call for recommendations for

8     sentencing from the government.  Mr. Kanwit.

9          MR. KANWIT:  Thank you, your Honor.  The government's

04:35 10    recommendation for Mr. Bartone is the low end of the

11    guidelines, 57 months.  We have reached that recommendation

12    based primarily on Mr. Bartone's immediate confession to the

13    crime following his arrest and his criminal history, which,

14    obviously, is taken into account in the guidelines in terms of

15    the GSR range.  But also, said more broadly, if you take a step

16    back, these acts appear to be totally out of character for Mr.

17    Bartone's life previously to this -- these two crimes.  He does

18    not have a criminal history.  He had a stable family life, and

19    it's, frankly, incomprehensible why he engaged in these two

04:36 20    crimes.

21          That having been said, as I indicated in the

22    sentencing of his codefendant, they are very serious crimes,

23    and they cannot be taken lightly.  There are good arguments to

24    be made that Mr. Bartone should be sentenced to something above

25    the low end of the guidelines.  However, I have met with Mr.

1   Bartone on several occasions.  I have listened to him.  I've

2   reviewed his family history as presented in the PSR.  I have

3   talked to him about the crimes.  And it's my conclusion that a

4   greater sentence above what the government is recommending is

5   not necessary either for his rehabilitation, his specific

6   deterrence, and perhaps, although somewhat less so, not

7   necessary for general deterrence.

8          That, I think, frankly, is the most vulnerable aspect

9   of the government's recommendation.  Its comparability to

04:37 10   others charged with the same crime, if they had any criminal

11   history at all, they would get a greater sentence.  But for

12   this individual, I think 57 months is a sufficient penalty.

13   It's a significant sentence for somebody who's never done a day

14   of jail in his life.

15          THE COURT:  Thank you, Mr. Kanwit.  Mr. Sheketoff.

16          MR. SHEKETOFF:  There is a Grateful Dead song that has

17   a verse that's always stuck in my mind.  "Sometimes the light's

18   all shining on me.  Other times, I can barely see."  And

19   sometimes I understand my clients.  I get it.  I look at their

04:38 20   Presentence Report.  I just understand.  Other times, I'm just

21   -- it's an enigma.  It's a complete enigma.

22          So his wife writes, your Honor:  "I know what Larry

23   has done is very serious."  I'm not reading the whole letter.

24   "I am in shock that he had any role in a robbery.  In his

25   entire life, he has never been in trouble with the law.  I am

1    so disappointed in him and heartbroken."  And she is here.  And

2    it was hard for us to convince her to come, not because she

3    doesn't love her husband, but this is an absolute nightmare for

4    her and a heartbreak.

5         "What I've always admired about Larry is that he's

6    always been such a hard worker.  When Kristen was born" -- this

7    is the daughter that the two of them have -- "he worked two

8    jobs in order for me to be able to stay at home -- to be a

9    stay-at-home mom.  Larry has always put Kristen and I before

04:39 10   himself even if that meant he had to go without.

11         "I know -- he knows -- what he has done is

12   irreversible.  I'm sure he will never forget the look on his

13   daughter's face when he had to tell her what had happened.  And

14   I know he will never forget the disappointment and anger I feel

15   towards him."  Okay.

16         He confessed immediately.  He did his best to help the

17   government in every way he could.  He filed no motions.  He

18   pled guilty.  He truly regrets and asks me to apologize most

19   specifically to his wife and to the Court, which I do.  He's

04:40 20   not capable of talking to you.

21         I know that in Miss Kelleher's memorandum she said he

22   was the brains of the operation.  For me, now that I've known

23   him for a while, that's -- that really strikes a funny bone

24   because he's not the brains of any operation.  He's just not

25   the brains.

1      He was a dedicated, hardworking family man who had a

2 long-standing job that he had been told was over.  They were

3 going to lay off everybody.  And how he got from Point A to

4 Point Z without stopping in between is simply an enigma.

5      I believe that what the government has recommended is

6 fair.  I wish I could ask you to go below that.  I guess I will

7 ask you to go below that, but I don't reasonably expect that

8 you will.  I don't think it's -- you'll ever see him again or

9 will any other court ever see him again.  I think his only

04:41 10 concern now is to get back to his family as soon as possible,

11 and I think he'll do everything that he can to lead a

12 law-abiding life hereafter.

13      This is a very serious crime.  I wish it were not so,

14 but it is.  And as you said in the last sentencing hearing,

15 someone could have been seriously injured.  We're very

16 fortunate that no one was seriously injured.

17      This has been a very difficult case for me because I

18 wish I had a better explanation for your Honor as to how this

19 happened.  I don't think he understands how it happened.  I

04:42 20 think the agents at some point said to us, can you just tell us

21 how this happened, how you went to leading this life, where you

22 were taking care of your family, working all the time, to this

23 level of criminality.  And he has no explanation.

24      I just urge the Court to take the low end of the

25 guideline, and I believe that you'll never see him again.

1          THE COURT:  Thank you, Mr. Sheketoff.  And I'll ask

2    the question even though you've already answered it.  But does

3    the defendant wish to address the Court before sentence is

4    imposed?

5          MR. BARTONE:  No, your Honor.

6          THE COURT:  Do counsel know of any reason why sentence

7    ought not to be imposed at this time?

8          MR. KANWIT:  The government does not, your Honor.

9          THE COURT:  Mr. Sheketoff?

04:43 10          MR. SHEKETOFF:  I do not, your Honor.

11          THE COURT:  Then please stand, Mr. Bartone.  Before I

12    impose sentence, I will say that this is a very sad occasion

13    for any district judge to have to impose a sentence on somebody

14    where it is inexplicable as to why you stand before me.  Your

15    attorney couldn't have been more eloquent.  He always is.  He

16    nails it usually, in front of me anyway, and the government as

17    well.

18          I am going to accept both the recommendation of the

19    government and your counsel, but that still doesn't explain to

04:43 20    any of us why it was necessary in the first place.  You are

21    going to go to jail for, you know, just under six years.

22    You've served about three months thus far.  If you get good

23    time, the 57 months will be down to somewhere around 48.  So

24    you're going to get out of jail in about four years, something

25    like that.

1          You have four years, therefore, to resolve to change

2     your life.  And that's what you have to do, notwithstanding the

3     fact that you have no prior record, that this was apparently

4     aberrant behavior, which is one of the grounds that one is

5     allowed to depart downward for under certain circumstances.

6     But it is not warranted in this case.  This was a very serious

7     crime, as your counsel noted and as I said with respect to the

8     sentence of your codefendant a few minutes ago.  Somebody could

9     have got killed easily.  Then you would be facing murder.  I

04:45 10    hope you realize how close you have come to spending the rest

11    of your life in jail.  You're not going to do that this time.

12         You're going to be a relatively young man when you get

13    out.  I consider 53 years old to be very young.  You'll have

14    ample opportunity to make it up to the people who are literally

15    and figuratively behind you.  And you'd better do it.  You'd

16    better resolve to your daughter and to everybody else in your

17    life that this was aberrant behavior and that it is never going

18    to happen again.  I assure you that if you're ever before me or

19    anyone else on a serious crime that you're going to go to jail

04:45 20    for the rest of your life.

21         Take it for what it's worth.  You got off relatively

22    scot-free this time because nobody was injured and because you

23    don't have a prior record.  But nobody knows.  Nobody knows why

24    it should be necessary for me to send you to jail for roughly

25    five years.  It doesn't make any sense.

1          Pursuant to the Sentencing Reform Act of 1984, and

2    having considered the sentencing factors enumerated in Title 18

3    of the United States Code, Section 3553(a), it is the judgment

4    of this Court that you, Lawrence Bartone, are hereby committed

5    to the custody of the Bureau of Prisons, to be imprisoned for a

6    term of 57 months.  This term consists of terms of 57 months on

7    each count, to be served concurrently.

8          The Court makes a judicial recommendation that you be

9    designated to a facility commensurate with security at which

04:46 10   you can participate in substance abuse treatment.

11          Upon release from imprisonment, you shall be placed on

12   supervised release for a term of three years.  This term

13   consists of terms of three years on each count, all such terms

14   to run concurrently.

15          Within 72 hours of release from custody of the Bureau

16   of Prisons, you shall report in person to the district to which

17   you are released.

18          The Court makes a judicial recommendation that you

19   consider participation in the District of Massachusetts CARE

04:47 20   program if you are deemed an appropriate candidate.

21          It is ordered that you shall make restitution to the

22   United States Postal Service in the amount of $10,571.21.  The

23   restitution shall be paid by you jointly and severally with

24   your codefendant, William Cataldo.  Payment of the restitution

25   shall begin immediately and shall be made according to the

1   requirements of the Federal Bureau of Prisons Inmate Financial

2   Responsibility Program while you are incarcerated and according

3   to a court-ordered repayment schedule during the term of

4   supervised release.

5       All restitution payments shall be made to the Clerk of

6   the United States District Court for transfer to the postal

7   service at the address set forth in the Presentence Report,

8   which is in Eagan, Minnesota.  You shall notify the United

9   States Attorney for this district within 30 days of any change

04:48 10  of mailing or residence address that occurs while any portion

11  of the restitution remains unpaid.

12      No fine is imposed as it is found that you do not have

13  the financial ability to pay a fine in addition to the

14  restitution.

15      While on supervised release, you shall comply with the

16  following terms and conditions:  First, you shall comply with

17  the standard conditions that have been adopted by this court

18  and are described in the guidelines at Section 5D1.3(c) and

19  which will be set forth in detail in the judgment and

04:48 20  committal.

21      You are not to commit another federal, state or local

22  crime and shall not illegally possess a controlled substance.

23      You are to refrain from any unlawful use of a

24  controlled substance and submit to one drug test within 15 days

25  of release from imprisonment and at least two periodic drug

1    tests thereafter, not to exceed 50 tests per year, as directed

2    by the Probation Office.

3         You are to submit to the collection of a DNA sample,

4    as directed by the Probation Office.

5         Special conditions further are as follows:  You are

6    prohibited from possessing a firearm, destructive device or

7    other dangerous weapon.

8         You are to pay the balance of any restitution imposed

9    according to a court-ordered repayment schedule.

04:49 10       You are prohibited from incurring new credit charges

11   or opening additional lines of credit without approval of the

12   Probation Office while any financial obligation remains

13   outstanding.

14        You are to provide the Probation Office access to any

15   requested financial information which may be shared with the

16   Financial Litigation Unit of the United States Attorney's

17   Office.

18        And you are to participate in a program for substance

19   abuse treatment, as directed by the United States Probation

04:49 20   Office, which program may include testing, not to exceed 50

21   tests per year, to determine whether you have reverted to the

22   use of alcohol or drugs.  You shall be required to contribute

23   to the costs of services for that treatment based upon your

24   ability to pay or the availability of third-party payment.

25        And, finally, you are not to consume any alcoholic

1   beverages.

2          It is further ordered that you shall pay to the United

3   States a special assessment of $400, which shall be due and

4   payable immediately.

5          Mr. Bartone, you have a right to appeal this sentence.

6   If you choose to appeal, you must do so within 14 days.  If you

7   cannot afford an attorney, an attorney will be appointed on

8   your behalf.  Do you understand that?

9          MR. BARTONE:  Yes, your Honor.

04:50  10          THE COURT:  Is there any further business to come

11   before the Court in these proceedings?  Mr. Kanwit?

12          MR. KANWIT:  No, your Honor.  Thank you.

13          THE COURT:  Mr. Sheketoff?

14          MR. SHEKETOFF:  No, your Honor.

15          THE COURT:  We are adjourned.

16          THE CLERK:  All rise.  The defendant is remanded.

17   (Whereupon, at 4:51 p.m. the hearing concluded.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4           I certify that the foregoing is a correct transcript

5      of the record of proceedings in the above-entitled matter to

6      the best of my skill and ability.

7

8

9

10

11

12      /s/Cheryl Dahlstrom           09/22/2011

13      Cheryl Dahlstrom, RMR, CRR      Dated

14      Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25